IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Christopher Giles, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13cv179 (LO/JFA) |
| | ) | |
| Benjamin Ulep, | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

Christopher Giles, a Virginia inmate proceeding <u>pro se</u>, has filed a civil rights action,

pursuant to 42 U.S.C. § 1983, alleging that medical staff at Sussex II State Prison were deliberately

indifferent to his serious medical needs. By an Order dated November 14, 2014, the Court granted,

in part, and denied, in part, defendants Dooley and Ulep's joint Motion to Dismiss. Defendant

Dooley was dismissed for plaintiff's failure to state a claim against defendant Dooley and

defendant Ulep was given thirty days to file a properly-supported Motion for Summary Judgment.

On December 16, 2013, defendant Ulep filed a Motion for Summary Judgment, pursuant to Fed.

R. Civ. P. 56. Plaintiff was given an opportunity to file responsive materials, pursuant to <u>Roseboro</u>

<u>v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and has filed a response to defendant's Motion for

Summary Judgment [hereinafter Pl.'s Resp.]. Docket No. 30. Defendant then filed a reply to

plaintiff's response. Docket No. 31. For the reasons that follow, defendant's Motion for Summary

Judgment will be granted.

## I.  Background

<u>Plaintiff's Statement of Material Facts</u>

Plaintiff's complaint centers around back pain and Cauda Equine Syndrome ("CES")

symptoms he argues that he began to show in early 2008. Pl.'s Resp. 5; Dkt. No. 30. Though

plaintiff provides a detailed chronology of his requests for medical care, his claims are easily

summarized. From May 15, 2008 through October 5, 2010, while incarcerated at Sussex II State Prison ("Sussex II"), plaintiff sought medical treatment for increasingly severe back pain and repeatedly "pleaded" to have an MRI and surgery. Id. at 5-9. Plaintiff was seen by defendant Dr. Ulep ("Dr. Ulep") from May 15, 2008 till July 12, 2010. Id. Dr. Dooley replaced Dr. Ulep at some point between July 12, 2010 and October 5, 2012, when he first saw and treated plaintiff. Id. at 9. Each interaction between Dr. Ulep and plaintiff will be discussed below.

On May 15, 2008, plaintiff first sought treatment from Dr. Ulep complaining that he was having difficulty, and experiencing pain, climbing on and off the top bunk. Am. Compl. 4. Dr. Ulep wrote plaintiff a permanent medical detail for a bottom bunk and prescribed him pain medication. Id. at 4. Dr. Ulep also examined X-rays of plaintiff that had previously been taken at two different institutions. Id. After noting the two had conflicting results, Dr. Ulep ordered another X-ray. Id.

On July 2, 2008, plaintiff had the ordered X-ray taken, which revealed plaintiff had a narrowing of his LS5 disc. Pl.'s Resp. 5. On October 21, 2008, Dr. Ulep saw plaintiff and, for the first time, reviewed and discussed plaintiff's July 2nd X-Ray with plaintiff. Id. at 6. After Dr. Ulep told plaintiff that he had a chronic degenerative disease, plaintiff requested an MRI and surgery; "Dr. Ulep laughed [plaintiff] off saying 'No Way.'" Pl.'s Resp. 6.

From October 21, 2008 through November 30, 2009, plaintiff did not seek treatment for his back pain because at their October 21st appointment Dr. Ulep indicated he would not recommend further treatment. Id. Plaintiff, however, did seek and receive medical treatment from Dr. Ulep during this time for other problems. Pl.'s Resp. 6; Ulep Aff. ¶¶ 13-18. Still, plaintiff "continued to suffer complications" from his back pain during this period and sought help with his back pain during medical appointments that focused on other ailments. Pl.'s Resp. 6.

On December 16, 2009, plaintiff again saw Dr. Ulep because plaintiff was experiencing

2

"excruciating lower back pain and associated complications." Pl.'s Resp. 7. Plaintiff told Dr. Ulep he was experiencing "frequent numbness on the lower side of his body and immobility" and asked about having a MRI and surgery to which Dr. Ulep gave an "unequivocal 'no'" because PHS would not "approve such an expenditure and therefore, he would not recommend it." Id. at 7. Dr. Ulep then told plaintiff he "was wasting his time in continuing to ask about it." Id.

On March 15, 2010, plaintiff sought treatment from Dr. Ulep for severe lower back pain and numbness down his left side and "pleaded" with Dr. Ulep for an MRI and surgery. Id. at 8. Dr. Ulep explained that there was "nothing to be done because PHS would not approve this expenditure and therefore, he would not waste his time in recommending it." Id. Dr. Ulep marked plaintiff's medical chart to denote chronic LS degenerative disease with uncontrolled pains. Id.

On May 12, 2010, Dr. Ulep updated plaintiff's chart adding "last low back evaluation showed normal spinal ROM in spite [sic] of abnormal mild LS5 changes." Id.

Dr. Ulep was replaced by Dr. Dooley sometime after July 12, 2010. Pl.'s Resp. 9. Dr. Dooley met with plaintiff multiple times and on November 1, 2010, made arrangements to have plaintiff taken to the emergency room at Virginia Commonwealth University Medical Center, where doctors performed an MRI on his spine. Id. at 9. On November 2, 2010, surgeons performed a lumbar left L5-S1 microdiskectomy on plaintiff's back. Id. On January 25, 2011, plaintiff saw Dr. Dooley and asked him why the November 2, 2010 surgery had not improved his condition. Id. at 9-10. Dr. Dooley said "his condition would not improve because the surgery was not performed sooner, and that the resulting effects would be permanent." Id. at 10.

Plaintiff states that he has suffered "physical pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, and loss of capacity to enjoy life" as a result of Dr. Ulep's denial of treatment and delay in treatment. Id. In plaintiff's response to defendant's Motion for Summary Judgment he states that he "declares under penalty of perjury,

and the record will show that, he had been presenting with CES symptoms before even coming

under Dr. Ulep's care." Pl.'s Resp. 11.

Defendant's Statement of Material Facts

Dr. Ulep is employed as a medical doctor at Sussex II State Prison and has extensive

training and experience in treating and assessing patients with chronic low back conditions,

including sciatica and CES. Ulep Aff. ¶ 2. On April 8, 2008, plaintiff arrived at Sussex II State

Prison and had a "relevant history of Degenerative Joint Disease in his spine." Id. at ¶ 5.

On May 15, 2008, Dr. Ulep first assessed plaintiff, noted his chronic lower back pain, and

wrote him a medical detail for a lower bed bunk. Id. at ¶ 6; Medical Record ("MR") 402.[1] At this

appointment, Dr. Ulep had no cause to suspect plaintiff had CES because he was not exhibiting the

characteristic symptoms that are associated with the disease; namely "sudden onset of impaired

bowel and bladder function, inability to have an erection, loss of sensation in the groin, buttocks,

and legs, and severe weakness or paralysis of legs." Ulep Aff. ¶ 6.

On June 24, 2008, plaintiff complained of back and left leg pain and weakness, mainly as

he got out of bed in the mornings. Ulep Aff. 8; MR-398. On July 1, 2008, Dr. Ulep ordered that an

X-Ray of plaintiff's spine be taken after noticing inconsistencies in two of plaintiff's previous

X-Rays. Ulep Aff. 8; MR-397. During his July 1, 2008 appointment, plaintiff did not complain of

difficulty with bowel or bladder control or difficulty in having an erection. Ulep Aff. 8. Plaintiff's

spinal rotation was normal and Dr. Ulep noted no neurological symptoms, as one would expect

with CES. Id. Dr. Ulep also noted "normal straight leg raises, with no back pain combined with

pain into the posterior thigh at 60 degrees or less." Id.; MR-397.

On July 9, 2008, plaintiff's July 2nd X-Ray came back normal with the exception of "slight

---

1 In support of his Motion to Dismiss, defendant attached, as Exhibit A to his affidavit, the portions of plaintiff's
medical record that correlate to the instant action. Citations to the medical record utilize the internal labeling that is in
the record itself. Thus, citation to MR-402 refers to the portion of plaintiff's medical record that is labeled "Giles
000402" in the lower right hand corner.

narrowing of L5-S1 disc space." Ulep Aff. ¶ 9; MR-396. On October 8, 2008, a nurse noted in plaintiff's medical file that plaintiff was complaining of back pain radiating to his left calf. Ulep Aff. ¶ 10; MR-393-94. Dr. Ulep found this to be "diagnostic of sciatica, resulting from the mild disc compression at L5-S1." Ulep Aff. ¶ 10.

On October 21, 2008, Dr. Ulep met with plaintiff, who informed Dr. Ulep that he hurt his back in the Delaware Department of Corrections. Ulep Aff. ¶ 11;MR-392. Dr. Ulep reviewed plaintiff's July 2, 2008 X-Ray with plaintiff and diagnosed plaintiff with a chronic degenerative disc disease, in part because plaintiff's spinal range of motion was satisfactory, which would not be expected with CES. Ulep Aff. ¶ 11. Dr. Ulep then requested an X-Ray for plaintiff's paranasal sinuses after noting that plaintiff may have a chronic sinus condition. Ulep Aff. ¶ 11. Dr. Ulep did not treat plaintiff's back pain from October 22, 2008 until November 30, 2009, and was not aware that plaintiff was avoiding treatment for his back pain during this time frame. Ulep Aff. ¶ 12. Dr. Ulep did, however, see and treat plaintiff for other medical conditions, on six separate occasions during this time frame. Ulep Aff. ¶¶ 12-16; MR 382-87, 391.

On November 30, 2009, plaintiff complained of low back pain and indicated that he had suffered a football injury in childhood. Ulep Aff. ¶ 19; MR-381. On December 16, 2009, plaintiff reported that he did not know of any injury to his back but "felt it was getting worse." Ulep Aff. ¶ 20; MR-380. After noting that plaintiff was not exhibiting any symptoms of CES or reporting any recent injury, Dr. Ulep assessed him as having chronic low back pain and prescribed Naprosyn. Ulep Aff. ¶ 20; MR-380. That same day, Dr. Ulep also treated plaintiff for skin lesions. Ulep Aff. ¶ 20; MR-380.

On March 15, 2010, Dr. Ulep met with plaintiff and prescribed him Disalcid, "a Non-Steroidal Anti-Inflammatory" for pain, after plaintiff stated that the Naprosyn was not helping. Ulep Aff. ¶ 21; MR-379. At that time, Dr. Ulep diagnosed plaintiff with "chronic

lumbosacral degenerative disease" because plaintiff had "no neuropathic symptoms," did not complain of bowel or bladder function, and had a "level of acuity and lack of neurological symptoms" that was "suggestive of [plaintiff] not having" CES. Ulep Aff. ¶ 20.

On May 14, 2010 and July 12, 2010, Dr. Ulep denied plaintiff's request for a bottom tier cell because he "saw no medical need for the detail." Ulep Aff. ¶¶ 22, 24; MR-376, 378. On August 13, 2010, Dr. Ulep took a leave of absence from work to address his own health issues and other medical personnel took over plaintiff's care. Ulep Aff. ¶ 25.

On November 1, 2010, plaintiff reported incontinence and difficulty with bowel movements, "suggestive of" CES. Ulep Aff. ¶ 27. Thereafter plaintiff was sent to the hospital, had surgery on his back, and was diagnosed with "a severe left L5-S1 herniated disk with associated cauda equine syndrome." Id. Plaintiff's CES "appeared to eventually be controlled with meds and [plaintiff] turned his wheelchair and came into the medical unit in October 2011." Id.

During Dr. Ulep's care of plaintiff, plaintiff showed symptoms of sciatica, not CES. Ulep Aff. ¶ 28. Dr. Ulep "did not tell [plaintiff] that [he] would alter [his] course of treatment in any way based upon cost." Ulep Aff. ¶ 29.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of

law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.   An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

The nonmoving party, however, may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This is true even where the nonmoving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings; a "declaration under oath . . . is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994).

### III. Analysis

To succeed on an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). To establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff must satisfy two distinct elements. First, he must show a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must demonstrate that defendants exhibited deliberate indifference to that medical need "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).   The prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also, Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

"A prisoner can establish a claim of deliberate indifference 'by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment.'" King v. US, 536 Fed. Appx. 358 (4th Cir. July 31, 2013) (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999)). "This standard can be satisfied when the need for treatment is obvious yet prison officials merely provide medical care which is so cursory as to amount to no

8

treatment at all." Id. (internal quotations omitted). The Fourth Circuit has explained that when a prisoner is provided "some treatment" appropriate for his condition, this fact does not necessarily satisfy the Eighth Amendment's requirement of "*constitutionally* adequate treatment." De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013) (emphasis in original).

Still, a prisoner's disagreement with medical personnel over the course of his treatment will not support an Eighth Amendment cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). Thus, "a medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." Estelle, 429 U.S. at 107.

Plaintiff has met the first element of bringing an Eighth Amendment claim by showing that he suffered from a serious medical condition. When plaintiff arrived at Sussex II State Prison, he had a history of back pain, associated with Degenerative Joint Disease. Ulep Aff. ¶ 5; MR-403. Defendant Ulep later diagnosed plaintiff with chronic disc disease and believed plaintiff to be suffering from Sciatica, which is characterized by "common lower back symptoms indicative of lower back disk compression." Ulep Aff. ¶ 10; MR-393-94. Such a chronic and degenerative disease that is accompanied by severe pain and numbness is the type of medical condition that is serious enough to meet the first element: showing a sufficiently serious medical need. See Loe, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Further, neither party disputes that plaintiff was ultimately diagnosed with and treated for CES. Ulep Aff. ¶ 27; Pl.'s Resp. 10. As such, plaintiff has met the first element his Eighth Amendment claim by showing he had a sufficiently serious medical need. See, e.g., Cooper, 814 F.2d at 945.

Rather than being deliberately indifferent, however, to plaintiff's serious medical need, a review of plaintiff's medical record shows that defendant Ulep treated the symptoms plaintiff

presented while plaintiff was under his care. Defendant Ulep first examined plaintiff on May 15, 2008, approximately one month after plaintiff first arrived at Sussex II. Ulep Aff ¶ 6; Pl.'s Resp. 3. At that appointment, plaintiff complained of lower back pain and defendant Ulep provided plaintiff with a lower bunk bed assignment and pain medication. Ulep Aff ¶ 6; Pl.'s Resp. 4; MR-402. Defendant Ulep attests that at that time plaintiff was not presenting with symptoms of CES, such as "sudden onset of impaired bowel and bladder function, inability to have an erection, loss of sensation in the groin, buttocks and legs and severe weakness or paralysis in the legs." Ulep Aff. ¶ 3. Defendant Ulep also took into account the fact that plaintiff had suffered from back pain for some time, id., and that plaintiff had not suffered "a recent violent injury to the back," which is typically seen in CES patients, id. ¶ 10.

When plaintiff next complained of back and leg pain and weakness on June 24, 2008, defendant ordered that an X-Ray be taken of plaintiff's back because plaintiff's medical file included two X-Rays, which were taken at plaintiff's previous institutions, that had conflicting results. Ulep Aff. 8. Defendant Ulep also conducted an examination of plaintiff and noted that plaintiff was not complaining of bowel or bladder difficulties, that plaintiff had normal straight leg raises, that plaintiff had normal deep tendon reflexes, and that his spinal rotation was normal. MR-397. The X-Ray results came back normal "except for slight narrowing of L5-S1 disc space." MR-396. Here then, defendant provided care to plaintiff for the back pain plaintiff complained.

Though a nurse noted that on October 8, 2008, plaintiff complained of back pain radiating to his left calf, MR-393-94, defendant found this to be "diagnostic of [the] sciatica resulting from the mild disc compression at L5-S1" that plaintiff's July 1, 2008 X-Ray revealed. Ulep ¶ 10. While this pain radiating to plaintiff's left calf does, in retrospect, appear to be a potential symptom of plaintiff's later-diagnosed CES, defendant Ulep noted that at that time

10

plaintiff did not have other symptoms of CES and felt the back pain that went to his left calf was due to Sciatica. Ulep Aff. 10. Defendant Ulep then decided to treat what he thought was plaintiff's Sciatica, which "requires [] conservative care and management to be attempted first." Id.

From October 21, 2008 through November 30, 2009, plaintiff avoided medical treatment for his back pain. Ulep Aff. ¶ 4; Pl.'s Resp. 6. As such, defendant could not have been deliberately indifferent to plaintiff's serious medical need during this time because - by plaintiff's own admission - defendant Ulep did not have actual or constructive knowledge of plaintiff's condition. Ulep Aff. ¶ 4; Pl.'s Resp. 6. Though plaintiff states that he did not seek further treatment for his "excruciating" back pain during this time because defendant Ulep indicated he was not going to recommend further treatment, Pl.'s Resp. ¶ 6, defendant Ulep denies making any such assertion, Ulep Aff. ¶ 30. Further, plaintiff fails to offer any evidence to support this assertion. Though plaintiff does include an "unsworn declaration" in which he declares "under penalty of perjury" that his statements in his response to defendant Ulep's motion for summary judgment are true and correct, plaintiff does not submit a formal affidavit. Pl.'s Resp. 17. This unsworn declaration cannot defeat defendant's properly-supported motion for summary judgment. Lujan, 497 U.S. at 888; Campbell-El, 874 F.Supp. at 406 - 07 ("[D]eclaration under oath . . . is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity."). For these same reasons, plaintiff's allegations that he repeatedly inquired about a MRI and surgery cannot defeat defendant's motion for summary judgment, even assuming without deciding that these allegations are more than a mere "disagreement with medical personnel over the course of his treatment." See Wright, 766 F.2d at 849 (holding that a disagreement with medical personnel over the course of treatment fails to support an Eighth

11

Amendment cause of action); Russell, 528 F.2d at 319.

Between November 30, 2009 and July 12, 2010, plaintiff sought treatment from Dr. Ulep for his back pain. Ulep Aff. ¶¶ 19-24; Pl.'s Resp. 7-9. During this time, defendant Ulep again noted that plaintiff's condition appeared to stem from Sciatica and his degenerative joint disease and that plaintiff did not have the acute symptoms of CES. Ulep Aff. 19-24. Defendant Ulep, therefore, "again assessed" plaintiff with low back pain on December 16, 2009 and prescribed Naprosym. Ulep Aff. ¶ 20. On March 15, 2010, defendant Ulep prescribed Disalcid for plaintiff's pain and diagnosed plaintiff with "chronic lumbosacral degenerative disease." Ulep Aff. ¶ 21. In May, June, and July of 2010, defendant Ulep denied plaintiff's request for a lower tier cell noting that plaintiff had a normal spinal range of motion and, thus, saw no medical need for the cell assignment. Ulep Aff. ¶¶ 22-24. Defendant Ulep's care of plaintiff ended here. It is uncontested that between August 13, 2010 and November 1, 2010, plaintiff's condition worsened and plaintiff was ultimately rushed to the emergency room for surgery on his back, where he was diagnosed with CES. Ulep Aff. ¶¶ 25-27; Pl.'s Resp. 9-10

At issue, however, is not that time period but only the time in which defendant Ulep treated plaintiff. During this time frame, from May 15, 2008 to October 21, 2008, and November 30, 2009 to July 12, 2010, plaintiff's medical records show defendant Ulep treated plaintiff for the condition which defendant believed plaintiff to have – chronic low back pain due to a degenerative disease. Ulep Aff. ¶¶ 6, 21. Defendant followed the course of treatment that the standard of care required, Ulep Aff. 10, and increased treatment as previous attempts to alleviate plaintiff's pain were unsuccessful. Ulep Aff. ¶¶ 20-21. Defendant reviewed old X-Rays, ordered a new X-ray, repeatedly prescribed pain and other medication, and, on multiple occasions, examined plaintiff's back. Ulep Aff. ¶ 6-11, 19-22. As such, rather than acting with an "actual intent or a reckless disregard" to plaintiff's medical needs, defendant provided care to plaintiff.

See Estelle, 429 U.S. at 106.

Though plaintiff's medical condition worsened and ultimately proved to be CES, this does not make defendant Ulep liable for being deliberately indifferent to plaintiff. In his response to defendant's motion for summary judgment, plaintiff asks if defendant Ulep is not responsible for his injury then who is. Pl.'s Resp. 15 ("Counsel argues . . . that Dr. Ulep is not responsible nor contributed in any way to Giles' injury. This then begs the question, who is responsible? . . . The only person left is Dr. Ulep; he is responsible."). Plaintiff's question, however, presupposes that every medical condition requires a person to be at fault. Such an assumption is unfounded. Not every medical problem is due to the intentional and deliberate denial of medical care that would trigger constitutional protections. While the Court sympathizes with plaintiff, there is nothing in the record to support a finding that defendant Ulep's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." See Estelle, 429 U.S. at 106; Miltier, 896 F.2d at 851. As such, defendant's motion will be granted.

### V. Conclusion

For the above-stated reasons, defendant's Motion for Summary Judgment will be granted. An appropriate Order shall issue.

Entered this ___30th___ day of ___April_____ 2014.

Alexandria, Virginia

_____/s/_____
Liam O'Grady
United States District Judge

13